IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
JACKSON DIVISION

ANNIE DELORES PATRICK                                                        PLAINTIFF

VS.                                              CIVIL ACTION NO. 3:10cv371-DPJ-FKB

MICHAEL J. ASTRUE, COMMISSIONER
OF SOCIAL SECURITY                                                         DEFENDANT

## REPORT AND RECOMMENDATION

Plaintiff brought this action to obtain judicial review of a final decision of the Commissioner of the Social Security Administration.  Presently before the Court are the parties' dispositive motions.   Having considered the motions, the memoranda in support of the motions, the oral arguments of counsel,  and the administrative record, the undersigned recommends that Plaintiff's motion be denied and that the Commissioner's motion be granted.

## I. Procedural History and Administrative Record

Plaintiff filed for disability insurance benefits on May 17, 2006. She alleges disability beginning April 24, 2006, due to a variety of medical problems including obesity and depression.  Her applications were denied by the Social Security Administration (SSA) both initially and on reconsideration.  Following a hearing on January 14, 2009, the Administrative Law Judge (ALJ) issued a decision on February 5, 2009, finding that Plaintiff was not disabled.  The Appeals Council denied review, thereby making the decision of the ALJ the final decision of the Commissioner.  Plaintiff then brought this

appeal pursuant to section 205(g) of the Social Security Act, 45 U.S.C. § 405(g).

Plaintiff was born on March 10, 1979 and was 29 years of age at the time of the ALJ's decision. She has a high school education and past relevant work experience as a poultry dresser, poultry hanger, and poultry weigher. Her medical history is notable for ongoing treatment of severe depression at Weems Mental Health Center, one week of inpatient treatment for depression in 2006 at Laurel Wood, and regular evaluation and treatment at Sebastopol Medical Clinic for obesity, hypertension, diabetes, asthma, and frequent upper respiratory infections. The record also contains the opinions of three consultants. A consultative examination was performed on August 4, 2006 by Dr. William Lewis. Dr. Lewis noted that Plaintiff complained of periods of chest discomfort lasting approximately ten to fifteen minutes precipitated by activities such as bending over and lifting heavy objects. He determined that these were not due to ischemic cardiovascular disease. In July of 2006 Dr. Joseph Dunn performed a comprehensive mental status exam. Dr. Dunn's diagnosis was a depressive disorder, not otherwise specified, and he noted that Plaintiff appeared to have a reduced level of energy. He concluded that she had the ability to follow simple instructions, could perform routine, repetitive tasks, and could carry out the activities of daily living. A residual functional capacity (RFC) assessment was completed by Dr. Robert Culpepper, a non-examining consultant, in August of 2006. Dr. Culpepper opined that Plaintiff could lift or carry fifty pounds occasionally and twenty-five pounds frequently, stand or walk for six hours in an eight-hour day, and sit for six hours.

Of particular relevance to Plaintiff's argument before this court is the RFC

assessment performed by Karen Reece, a family practice nurse practitioner who treated Plaintiff on a regular basis at the Sebastopol Medical Clinic. In her assessment, dated January 14, 2009. Ms. Reece opined that Plaintiff could lift or carry ten pounds occasionally and less than ten pounds frequently, that she could stand or walk four hours in an eight-hour workday, that she could sit for six hours, and that she would need the option to sit, stand or walk at will. Ms. Reece stated that the bases for these limitations were leg pain and the fact that Plaintiff is easily fatigued. She stated that Plaintiff could frequently twist, and occasionally stoop, crouch and climb, and Ms. Reece placed no limitations on Patrick's ability to reach, handle, finger, feel, push or pull. According to Ms. Reece, Plaintiff would need to avoid even moderate exposure to extreme temperatures, wetness, humidity, fumes, and other environmental irritants and hazards. Ms. Reece stated that in her opinion, Plaintiff would likely be absent from work more than three times a month.

## II. **The Decision of the ALJ**

In considering Plaintiff's claim, the ALJ found that Plaintiff had not been engaged in substantial gainful activity since April 24, 2006, the alleged onset date.[1] The ALJ

---

[1]In evaluating a disability claim, the ALJ is to engage in a five-step sequential process, making the following determinations:

(1)  whether the claimant is presently engaging in substantial gainful activity (if so, a finding of "not disabled" is made);

(2)  whether the claimant has a severe impairment (if not, a finding of "not disabled" is made);

(3)  whether the impairment is listed, or equivalent to an impairment listed, in appendix 1 of the regulations (if so, then the claimant is found to be

3

determined that Plaintiff suffers from the severe impairments of severe obesity and depression. He specifically rejected Dr. Dunn's opinion that her depression was non-severe, finding it was no longer supported by the medical evidence of ongoing treatment for depression. He further concluded that Plaintiff's impairments to not, either singly or in combination, meet or medically equal the criteria for any impairment listed in Appendix 1, Subpart P, Regulation No. 4. In determining Plaintiff's residual functional capacity (RFC), the ALJ gave little weight to the opinion of Dr. Culpepper, stating that more recent medical evidence indicated greater exertional and postural limitations than those found by Dr. Culpepper. As to the opinion of Ms. Reece, he stated as follows:

> The medical source statement completed in January 2009 by Ms. Reese limits the claimant to less than sedentary work due to exertional and additional nonexertional postural and environmental limitations. She further reports the claimant is likely to be absent from work more than 3 times a month. Medical findings identified to support these severe limitations include leg pain, easily fatigued, and frequent URI's/chronic sinusitis. . . . Ms. Reese provided no adequate reasons why URI's would impose any work related limitations. With regard to leg pain, most exams of the numerous visits do not mention any leg issues. In fact, since March 2006 the claimant sought treatment for leg pain on only two occasions, once for mild swelling and once for calf tenderness. There are no ongoing complaints of leg cramps since the claimant started taking a potassium supplement in 2005. Thus, the limitation of stand/walking for no more than 4 hours during an 8 hour workday is not supported. Considering the claimant's obesity, the Administrative Law Judge concurs in finding that the claimant can only occasionally perform postural

---

disabled);

(4) whether the impairment prevents the claimant from doing past relevant work (if not, the claimant is found to be not disabled); and

(5) whether the impairment prevents the claimant from performing any other substantial gainful activity (if so, then claimant is found to be disabled).

*Leggett v. Chater*, 67 F.3d 558, 564 n.2 (5th Cir. 1995). The analysis ends at the point at which a finding of disability or non-disability is required.

activities but the other limitations identified by the nurse practitioner are rejected because they are inconsistent with actual exam notes.

The ALJ found that Plaintiff has the RFC to lift or carry twenty pounds occasionally and ten pounds frequently, to stand or walk for six hours and to sit for six hours in an eight-hour workday, that she can occasionally climb, balance, stoop, crouch, kneel, and crawl, and that she is limited to performing simple repetitive tasks. Thus, he found that Plaintiff is capable of performing a reduced range of light work.[2] Based upon the testimony of a vocational expert, the ALJ found that Plaintiff could perform her past relevant work as a poultry dresser. He therefore found at step four of the sequential process that Plaintiff is not disabled.

### III. Analysis

In reviewing the Commissioner's factual findings, this Court's task is not to determine the ultimate question of whether Plaintiff is disabled. Rather, the Court is limited to an inquiry into whether the ALJ applied the correct legal standards and, if so, whether substantial evidence supports the decision. *Randall v. Astrue*, 570 F.3d 651 (5th

---

[2]"The Social Security Administration defines light work as follows: "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities." 20 C.F.R. § 404.1567(b). The ability to perform light work encompasses the ability to stand and walk for six hours in an eight-hour work day. *Lawler v. Heckler*, 761 F.2d 195, 198 (5th Cir. 1985) (quoting the *Dictionary of Occupational Titles).*

Cir. 2009).³ In support of reversal of the Commissioner's decision, Plaintiff attacks the decision of the ALJ on a single ground: that the ALJ erred as a matter of law in rejecting, without the articulation of good cause for doing so, the opinion of Ms. Reece that Plaintiff could lift or carry only ten pounds occasionally and less than ten pounds frequently. Plaintiff's argument is premised on the "treating physician rule," which provides that an ALJ must show good cause for giving little or no weight to the opinion of a treating source. *Newton v. Apfel*, 209 F.3d 448, 455-56 (5th Cir. 2000). Good cause may be shown where the opinion is conclusory, unsupported by the medical evidence, or otherwise bereft of substantial support. *Id.* at 456.

Plaintiff's argument highlights the distinction in the SSA regulations between "acceptable medical sources" and sources which are not "acceptable medical sources" ("other medical sources"). Under the SSA regulations, acceptable medical sources include physicians, psychologists, optometrists, podiatrists and speech pathologists. 20 C.F.R. §§ 404.1513(a) & 416.913(a). Nurse practitioners are not acceptable medical sources. Only an acceptable medical source may (1) establish the existence of a

---

³"Substantial evidence means more than a scintilla, less than a preponderance, and is

> `such relevant evidence as a reasonable mind might accept to support a conclusion. It must do more than create a suspicion of the existence of the fact to be established, but "no substantial evidence" will be found only where there is a "conspicuous absence of credible choices" or "no contrary medical evidence."'

*Id.* (quoting *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983)).

medically determinable impairment; (2) give a medical opinion; and (3) be considered as a treating source. SSR 06-03p, 2006 WL 2329939. However, evidence from other sources (non-acceptable sources) can be used to show the *severity* of an impairment and how it affects the individual's ability to function. *Id.* Furthermore, the SSA has stated that opinions of other medical sources, including nurse practitioners, may be evaluated using the same factors as those used for acceptable medical sources, and that it may be appropriate in certain cases to give the opinion of a non-acceptable source more weight that the opinion of an acceptable source. SSR 06-03p, 2006 WL 2329939.[4]

Because a nurse practitioner is not an acceptable medical source, he or she cannot be considered as a treating source. *See id.* Plaintiff acknowledges this distinction. Nevertheless, she argues that because SSR 06-03p provides that non-acceptable medical source opinions are to be evaluated in the same manner as those from acceptable medical sources, it follows that the treating physician rule should apply to a nurse practitioner's opinion. Thus, Plaintiff's position is that the failure of an ALJ to articulate good cause for rejecting the opinion of a nurse practitioner who has treated the claimant constitutes legal error just as if the opinion had rejected the opinion of a treating source.

The flaw in this argument is that the treating physician rule and the good cause requirement of *Newton* are outgrowths of the doctrine that the opinion of a treating

---

[4]The factors for evaluating a medical opinion are length of treatment by the treating physician, frequency of examinations, nature and extent of the relationship, consistency of the opinion with the medical record, and specialization. 20 C.F.R. §§ 404.1527(d) & 416.927(d).

7

medical source is entitled to great deference. And, the Fifth Circuit has clearly indicated that the opinion of a non-acceptable medical source - even one who has treated the claimant on a regular basis - is *not* entitled to the same deference as that owed to a treating source. In *Thibodeaux v. Astrue* 324 Fed. Appx. 440 (5th Cir. 2009), the claimant argued that the ALJ had erred by failing to perform a detailed analysis of a therapist's opinion under 20 C.F.R. § 404.1527(d)(2). The Fifth Circuit rejected this argument on the basis that therapist was not entitled to same deference as a treating physician. *Thibodeaux*, 324 Fed. Appx. at 445. Thus, the undersigned concludes that Plaintiff's position is not supported by Fifth Circuit law.[5]

Furthermore, the undersigned is not persuaded that the ALJ failed to articulate good cause for not accepting Ms. Reece's opinion as to Plaintiff's ability to lift and carry. The ALJ gave a careful analysis of all of the medical evidence, including the treatment notes of Ms. Reece. While he did not specifically mention Ms. Reece's assessment of Plaintiff's ability to lift and carry, he nevertheless stated that the "other limitations" identified by Ms. Reece were not supported by the examination notes.[6] The written

---

[5] Since the oral argument, Plaintiff's counsel has, by a letter to the undersigned, advanced the argument that the nurse practitioner's opinion should be considered as part of the opinion of the physician under whom she worked, and is therefore the opinion of an acceptable medical source. *See Gomez v. Chater*, 74 F.3d 967, 971 (9th Cir. 1996). This argument is a good one. It is not, however, supported by Fifth Circuit law. Furthermore, adoption of this rule would not change the result in this case since the undersigned has determined that the ALJ satisfied the good cause requirement of the treating source rule.

[6] The treatment notes from Sebastopol Medical Clinic from the onset date through 2008 forward reflect treatment for headaches, urinary tract infections, upper respiratory infections, hypertension, and diabetes. The records also indicate one occasion when she complained of back pain and several other times when she presented with complaints of various body aches, including two instances of leg pain and one of leg cramps.

opinion of the ALJ satisfies the "good cause" standard.

Finally, the undersigned has reviewed the entire administrative record and concludes that the ALJ's opinion is supported by substantial evidence.

### IV. **Conclusion**

The undersigned recommends that Plaintiff's motion be denied, that the Commissioner's motion be granted, and that the decision of the Commissioner be affirmed. The parties are hereby notified that failure to file written objections to the proposed findings, conclusions, and recommendation contained within this report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the proposed factual findings and legal conclusions accepted by the district court. 28 U.S.C. § 636; Fed. R. Civ. P. 72(b); *Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996).

Respectfully submitted, this the 15th day of August, 2011.

/s/ F. Keith Ball  
UNITED STATES MAGISTRATE JUDGE